IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TERRY K. OFORI,  )  <br>     Plaintiff,  ) <br> v.  ) <br>   ) <br> HAROLD CLARKE, *et al.*,  ) <br>     Defendants.  ) | Civil Case No. 7:20-cv-00343 <br><br> By: Elizabeth K. Dillon <br>     United States District Judge |

**MEMORANDUM OPINION**

Plaintiff Terry K. Ofori, proceeding *pro se*, filed a civil rights complaint asserting numerous claims against more than thirty defendants. The court screened and sua sponte dismissed some of his claims, and severed the others into separate lawsuits. This case involves only Count III, Parts Seven and Ten of his amended complaint.[1] In Part Seven, Ofori alleges that defendants' policies regarding visitation (which limit contact and opportunities for photographs) violate his constitutional rights. In Part Ten, he challenges several aspects of WRSP's mail policies or practices.

Pending before the court is defendants' motion to dismiss, which seeks dismissal of all claims against them in Ofori's amended complaint.[2] Ofori has filed a "response in opposition," (Dkt. No. 25), but the response simply states that he has corrected the alleged deficiencies pointed out in the motion to dismiss through his proposed second amended complaint, which he submitted simultaneously. Because the court concludes that amendment would be futile, Ofori's motion to amend will be denied. For the reasons set forth herein, the motion to dismiss will be

---

[1] When first severed, this case also included Part One of Count III, but Ofori moved to dismiss that claim without prejudice, which the court granted. (Dkt. Nos 6, 8.)

[2] In the case from which this case was severed, the document docketed here as a complaint was actually Ofori's amended complaint. Then, Ofori moved to amend to delete a claim, which was granted. *See supra* note 1. Defendants refer to the originating complaint in this case (minus the dismissed claim) as the amended complaint, and so does the court. The court will refer to Ofori's proffered new complaint as the proposed second amended complaint.

granted. All other pending motions will be denied as moot.

## I. BACKGROUND

### A. Count III, Part Seven

The entirety of Part Seven of Count III states:

> [Wallens Ridge State Prison] prohibits as much human contact during visitation as possible. Inmates are required their one hug upon initiation of the visit, over a counter as well as upon completion. Inmates are not allowed to hug their loved ones during photos (being) taken at visitation and are limited to 2 photos of chest level and higher up. These arbitrary restrictions discourage visitors from driving nine or more hours to visit their loved ones [who are] incarcerated, thus violating plaintiff's rights.

(Am. Compl. 28, Dkt. No. 1.)

Defendants point out in their motion to dismiss that Ofori did not allege that this visitation policy affected him at all and thus he lacked standing to assert the claim. They also argue that he did not name any defendant responsible for this policy, so as to impose liability under § 1983. Lastly, they argue that the alleged restrictions on visitation fail to state a viable claim under any constitutional theory. (*See generally* Mem. Supp. Mot. Dismiss, Dkt. No. 15.)

In his proposed second amended complaint, Ofori identifies several specific incidents in which family and his girlfriend refused to travel long distances only to get two non-contact photos and a kiss/hug. He claims that he went "for years without any visits" as a result. (Proposed 2nd Am. Compl. 1–3, Dkt. No. 24.) Ofori also specifically identifies some defendants to whom he complained or attempted to complain about this policy, including defendant Stallard and a defendant in one of the other severed cases, Cochrane.[3]

---

[3] Ofori also alleges that Stallard or Cochrane interfered with his ability to file a grievance, but that does not state an independent constitutional claim. *See Booker v. S. C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017), ("[I]nmates have no constitutional entitlement or due process interest in access to a grievance procedure."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("The Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Oliver v. Gray*, No. 7:09-CV-00004, 2009 WL 366150, at *2 (W.D. Va. Feb. 12, 2009), *aff'd*, 360 F. App'x 417 (4th Cir. 2010) ("Because a state grievance procedure does

## B. Count III, Part Ten

In Part Ten of Count III, Ofori raises three distinct issues, all of which are related to mail. First, he contends that WRSP staff "intentionally and regularly lose or circumvent inmates' outgoing (and sometimes incoming) mail." (Am. Compl. 30.) He claims that this occurs with both regular and legal mail, as well as with internal documents, such as grievances and disciplinary forms. He, however, does not identify a single specific instance of when this has occurred, nor does he identify a single instance of when this has occurred to him; he simply states in conclusory fashion that it "regularly" happens. Moreover, he does not identify any specific defendant who ever interfered with his mail, as is required to state a claim under Section 1983.

Second, Ofori complains about a policy implemented pursuant to a March 21, 2017 memo issued by Leslie Fleming, then WRSP's warden, which he says was "presumably" issued with the approval of Harold Clarke, VDOC's Director, and A. David Robinson, VDOC's Chief of Corrections Operations. Specifically, Ofori claims that all incoming inmate correspondence is photocopied in black and white and only the copies are delivered to inmates. So, instead of receiving "clearly visible and durable colored photographs," inmates receive "barely visible" copies on "low grade paper." (*Id.*) Ofori states that this issue was presented to defendants Fleming, Manis, Combs, Anderson, Young, Brown, and Stallard, but his complaints went unaddressed.

---

not confer any substantive right upon prison inmates, a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983."). Ofori's proposed second amended complaint also alleges Cochrane threatened him with planting a shank in his cell or having him stabbed if plaintiff did not stop complaining. That claim is not part of this lawsuit; instead, it appears that the facts underlying that claim are part of the complaint in *Ofori v. Fleming*, No. 7:20-cv-345 (W.D. Va.). To the extent his allegation here is distinct from his similar claim in that case, the court denies leave to include new retaliation claims in this case. Ofori may assert any new retaliation claims, *i.e.*, ones that are not already part of his other cases, in a new lawsuit.

Third, he claims that when outgoing mail is returned by the post office for any reason (such as insufficient postage or an incorrect address), prison officials will not deliver the mail to inmates. Instead, they give inmates the option to pay for the item to be remailed or the item is destroyed. He claims that this is the "destruction of intellectual property" and that it fails to provide inmates with constitutionally adequate access to their mail. He again claims that the issue was presented to defendants Fleming, Manis, Combs, Anderson, Young, Brown, and Stallard, but his complaints went unaddressed. (*Id.*)

In their motion to dismiss, and akin to their arguments about the visitation policy, defendants point out that Ofori's claims (or most of them) do not allege that he suffered anything as a result of the challenged policies or procedure. They thus argue that he lacks standing. They also contend that he has failed to sufficiently allege personal involvement on behalf of most of the defendants and most claims. Lastly, defendants argue that his allegations fail to state a claim on which relief can be granted. Thus, they seek dismissal of all claims against them. (*See generally* Mem. Supp. Mot. Summ. J., Dkt. No. 15.)

In his proposed second amended complaint, Ofori provides additional details regarding this claim. First, he alleges that "in early 2016," he submitted a 28-page "Notice of Claim" to be mailed to the Division of Risk Management. He sent it certified mail, with a request for a return receipt, and he received notice that it was received. Then, he filed a complaint in the Sussex County general district court (Case No. Civ17-371) in late 2017, and the Commonwealth's Attorney office issued a response/motion on January 5, 2018, arguing that the notice was not proper because it lacked details. The response further indicated that the Commonwealth's Attorney had only received four of the twenty-eight pages. Ofori alleges that his complaint was dismissed as a result on January 29, 2018. Nowhere does he identify what legal claims were part of that suit. (Proposed 2nd Am. Compl. 3–4, Dkt. No. 24.)

Ofori's proposed second amended complaint also alleges that, in 2016, he submitted two "legal mails or motions to vacate" to be mailed to the Circuit Court and Commonwealth Attorney of Fairfax County, but the mail never made it to either destination. When Ofori complained about it, Cochrane (who is not a defendant in this case) approached him, admitted that WRSP staff "did improperly toy with" the mail, and offered to ensure that Ofori's mail would be left alone if he would "drop[] the issue." Cochrane also told him that Ms. Young "had put out a decree for [Ofori's] mail to be monitored." Ofori says he was in "fear" and so "went along with" Cochrane's suggestion to "drop the issue." But then, in late April 2017, he discovered that Stallard and other WRSP staff had prevented some of his mail from being filed or processed. He then complained again, but he received no reply to his complaints. (*Id.* at 5.)[4]

With regard to the policy regarding photocopying colored photographs, the second sub-part of Part Ten, Ofori's proposed second amended complaint alleges that, on one occasion in June 2017, he was sent photographs from a relative's funeral and wake in Ghana. He alleges that, pursuant to the policy, he was only given black and white copies of those photographs, and he could not really see who or what was in them. (*Id.* at 6–7.)

Turning to the third sub-part of his mail claim, Ofori identifies an instance, in April 2018, in which mail was returned to him for insufficient postage. Instead of allowing him to just add a 21-cent stamp, an unidentified official from the investigator's office opened the envelope, gave Ofori its contents, and then destroyed the envelope, "costing [Ofori] the 47-cent postage stamp that was on it." (*Id.* at 7.)

---

[4] Ofori further alleges that he tried to obtain an informal complaint form from Stallard to complain about the problem with his mail, but he was refused one. Indeed, Ofori contends that "a lot of his submissions" of "informal complaint forms, request forms, and outgoing mail" were not being properly processed, responded to, and/or otherwise mailed. He lists a number of specific issues about which he claims he complained, but the internal complaint forms were not processed. (*Id.* at 4.) As discussed *supra* note 3, these allegations do not state an independent constitutional claim. Such allegations may be relevant to his efforts to exhaust his administrative remedies, but defendants are not asserting in this case that he failed to exhaust.

On another occasion, in May 2018, Ofori sent an envelope to Lexis Publishing to "obtain some services," which included $18.80 postage. The mail was returned to him because it was sent to the incorrect address. The WRSP mailroom told him he had seven days to provide them a new envelope with proper postage and an alternate address. Because he did not have any other address, he asked for additional time through a request for services. His request was never processed, and he received no response to his other inquires on the topic. (*Id.* at 8.)

Lastly, on two other occasions, he claims that he had mailed original artwork or poems. They were returned to him, and, because he could not re-pay the postage, those documents were destroyed. He describes the contents of those as original drawings and poems, which he describes as his "intellectual works." Because he never had or made copies of them, they were "lost to him forever." (*Id.* at 8.)

He also identifies one instance in which he sent documents to this court and the mailing of his envelope was delayed. It was then returned "due to an address issue," and when he received it back, it had been completely opened in the mailroom and some of the documents (affidavits from other prisoners) were missing. He believes that several officials had first-hand knowledge of the contents of his missing documents (or had read them), so he also has complained about that through the grievance system. He alleged in those grievances, and grievance appeals he submitted, that he was being subjected to several retaliatory adverse actions, apparently by Stallard and others. (*Id.* at 9–10.)[5]

---

[5] As noted *supra* note 3, the court will not grant Ofori leave to add retaliation claims to this lawsuit.

II.  DISCUSSION

A. **Motion to Amend**

The court first addresses Ofori's motion to amend (Dkt. No. 24).  Leave to amend should be freely given, Fed. R. Civ. P. 15(a), but leave to amend may be denied for several reasons, including where the amendment would be futile.  *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006); *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (noting that an amendment is futile if the amended complaint would not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)).[6]

Ofori's proposed second amended complaint purports to correct the deficiencies in the amended complaint.  The court agrees that the proposed amendments include additional allegations responsive to defendants' arguments about standing and that Ofori points more specifically to the alleged basis for liability on behalf of most of the defendants.  But having reviewed it, and as discussed next, the court concludes that, even with the additional detail Ofori provides, all of his claims fail because they do not state a claim for which relief can be granted.  Accordingly, allowing amendment would be futile.  *Laber*, 438 F.3d at 426.  Ofori's motion to amend will be denied.

B. **Motion to Dismiss**

Defendants' motion to dismiss (Dkt. No. 14) seeks dismissal of all claims against them.  A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a

---

[6] Internal citations, alterations, and quotation marks are omitted throughout this opinion, unless otherwise noted.  *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the nonmoving party." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302. *Pro se* complaints are given a liberal construction. *Laber*, 438 F.3d at 413 n.3.

### 1. Visitation Policies

The Supreme Court has recognized that prison administrators may impose significant restrictions on visits to prisons, and has specifically upheld the suspension of non-contact visits for two years for prisoners who have substance-abuse violations, concluding that such a suspension did not violate the First, Eighth, or Fourteenth Amendments. *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003). The Court also upheld a restriction limiting high-security-risk inmates to noncontact visitation, and a restrictions on visits by children, who were allowed only if they were the children, stepchildren, grandchildren or siblings of the inmate, and they had to be accompanied by a parent or guardian at all times. In *Williams v. Ozmint*, 716 F.3d 801, 807 (4th Cir. 2013), the Fourth Circuit held that there was no clearly established law recognizing a right to prison visitation under the First, Eighth, or Fourteenth Amendments. It thus upheld defendants' two-year suspension of plaintiff's visits, which the court noted were not arbitrary.

In prior cases, too, both the Supreme Court and the Fourth Circuit have upheld restrictions on visitations, including contact visitations. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (recognizing that inmates have no "interest in unfettered visitation . . . guaranteed by the Due Process Clause"); *Block v. Rutherford*, 468 U.S. 576, 587–88 (1984) (upholding denial of contact visits altogether for pretrial detainees). Recognizing some of the above (and other) authority, a judge of this court previously described it as "well settled" that

"neither the Supreme Court nor the Fourth Circuit has recognized a constitutional right to prison visitation." *Strebe v. Kanode*, No. 7:17cv321, 2018 WL 4473117, at * 4 (W.D. Va. Sept. 18, 2018), *aff'd*, 783 F. App'x 285 (4th Cir. 2019).[7]

In this case, moreover, Ofori is not alleging that visitation was suspended altogether, or that he was not permitted contact visits, but he is simply complaining that the visits do not provide enough opportunities for contact with his visitors. As the Supreme Court has recognized, though, "there is a valid, rational connection between a ban on contact visits and internal security of a detention facility" and that connection "is too obvious to warrant extended discussion." *Block*, 468 U.S. at 586. Ofori's allegations are insufficient to state a constitutional violation, even with the additional allegations in his proposed second amended complaint. This claim will be dismissed.

### 2. Mail Policies and Practices

As noted in the background section, there are three distinct complaints that Ofori makes about the mail policies: (1) the mishandling of mail, either intentionally or negligently, including legal mail; (2) the photocopying of his color photographs to black and white; and (3) the policy that returned mail be either destroyed or that the prisoner to whom it was directed pay for it to be remailed. Ofori states that he is asserting these claims under the First and Fourteenth Amendments.[8]

---

[7] The plaintiff in *Strebe* did not pursue his claim regarding prison visitation on appeal, so the Fourth Circuit did not address that issue. 783 F. App'x at 287–88.

[8] Ofori also claims that the mail policies violated his Eighth Amendment rights, but an Eighth Amendment claim requires a showing of a deprivation of a basic human need that is objectively sufficiently serious, *i.e.*, a serious or significant physical emotional injury, or a substantial risk of such harm. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). A failure to deliver mail, delivery of inferior copies of mail, and a requirement that prisoners pay for mail to be resent if it is rejected by the mail carrier, are plainly insufficient. *See, e.g.*, *Straws v. Alexander*, C/A No. 5:17-cv-02899-TMC-KDW, 2017 WL 10403466, at *2 (D.S.C. Dec. 8, 2017) (holding that prisoner's allegation that defendants failed to deliver his mail did not state an Eighth Amendment claim), *report and recommendation adopted*, 2018 WL 4346873, at *3 (D.S.C. Sept. 12, 2018), *aff'd*, 755 F. App'x 323 (4th Cir. 2019).

### a. *Mishandling of Mail, Including Legal Mail*

First of all, occasional incidents of mail mishandling do not rise to the level of a constitutional violation. *See Pearson v. Simms*, 345 F. Supp. 2d 515, 519 (D. Md. 2003), *aff'd*, 88 F. App'x 639 (4th Cir. 2004) (holding that "occasional incidents of delay or non-delivery of mail" are not actionable under § 1983); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (noting that "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation."); *Gardner v. Howard*, 109 F.3d 427, 430–31 (8th Cir. 1997) (same as to inadvertent instances of legal mail being opened outside of an inmate's presence); *Bryant v. Winston*, 750 F. Supp. 733, 734 (E.D. Va.1990) (same as to an isolated incident of mail mishandling). Although Ofori alleges that the mail was "regularly" tampered with, he supports that conclusory allegation only with a few specific instances. Thus, his allegations of "mail tampering" fail to state a constitutional violation.

To the extent Ofori references legal mail or is attempting to state a claim that he has been denied access to the court, a prisoner's right of access to the court "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Thus, in order to state a constitutional claim of denial of access to the courts, a plaintiff must allege facts showing that the challenged action has actually "hindered his efforts to pursue" a nonfrivolous legal claim. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Specifically, the plaintiff must identify in his complaint a "nonfrivolous," "arguable" legal claim, along with the potential remedy that claim sought to recover, that was lost as a result of the defendant's alleged interference with the plaintiff's right of access. *Christopher*, 536 U.S. at 415–16 (quoting *Casey*, 518 U.S. at 353). Put differently, the cause of action in the underlying action, "whether anticipated or lost, is an element that must be described

10

in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Id.* at 415.

Ofori has not satisfied that standard so as to state a claim. The additional details in his proposed second amended complaint include that a general district court case was dismissed because his prior notice of claim was not sent in its entirety to the Division of Risk Management, but he does not identify either a cause of action, the facts behind it, or the remedy he sought. This is insufficient to state a claim. *See id.* Likewise, he claims that copies of a "motion to vacate" sent to Fairfax County and the Commonwealth's Attorney were not mailed, but he does not indicate what those motions concerned, whether he was able to refile them later, or whether he lost any claim or remedy as a result of the non-mailing. Thus, his allegations about that also fail to state a claim.

To the extent Ofori is complaining about the destruction of his poems or artwork, he still fails to state a constitutional claim under the First or Fourteenth Amendment. Allegations that prison officials deprived an inmate of his property, whether intentionally or as a result of negligence, do not state any constitutional claim "if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Because plaintiff possessed tort remedies under Virginia state law, see Virginia Code § 8.01–195.3, it is clear that he cannot prevail in a constitutional claim for the alleged property loss caused by alleged mishandling of his mail. Thus, his claims based on the negligent or intentional loss of his property must be dismissed.

Ofori also claims that his property was destroyed pursuant to a prison policy (either the mail copying policy or the policy regarding returned mail), and the analysis for that type of allegation differs slightly. When property is taken pursuant to a policy, due process can sometimes require pre-deprivation procedures. *Parratt v. Taylor*, 451 U.S. 527, 537 (1981);

*Zinermon v. Burch*, 494 U.S. 113, 128 (1990) (explaining that a violation occurs only if the procedural protections in the policy are inadequate to ensure that deprivations are lawful). But a predeprivation hearing is required only where the State feasibly can provide one; "where a predeprivation hearing is unduly burdensome in proportion to the" property interest at stake, such a hearing is not required. *Zinermon*, 494 U.S. at 132.

Here, a predeprivation hearing before each piece of incoming mail to an inmate is photocopied and destroyed, or before returned mail, if not corrected, can be destroyed, would be utterly unwieldy. And, as discussed in the next two sections, the policies themselves pass constitutional muster. Moreover, each of the policies provides general notice to inmates. The policy concerning photocopying of incoming mail is made known to inmates, and Ofori admits he was aware of it. Likewise, when his outgoing mail was rejected by the post office and returned, Ofori admits that he was given an opportunity to remedy the problem.

For all of the foregoing reasons, Ofori's constitutional challenges to the mishandling of his mail fail.

    b. *Mail Copying Policy*

As noted by defendants, both the Eastern and Western Districts of Virginia have addressed the policy Ofori challenges and concluded that it is a valid policy that does not run afoul of the First Amendment or the Fourteenth Amendment. *E.g.*, *Bratcher v. Clarke*, No. 1:17cv474, 2018 WL 4658684, at *6–12 (Sept. 26, 2018); *Strebe v. Kanode*, No. 7:17cv00321, 2018 WL 4473117, at *6–*7 (W.D. Va. Sept. 18, 2018), *aff'd* 783 F. App'x 285 (4th Cir. 2019). Both of those courts addressed the challenged policy under *Turner v. Safley*, 482 U.S. 78, 89 (1987).

In considering the constitutionality of a particular prison regulation, *Turner* requires a court to consider four factors: (1) whether the regulation has a "valid, rational connection" to a

legitimate government interest; (2) whether alternative means are open to inmates to exercise the asserted right; (3) what impact an accommodation of the right would have on guards and inmates and prison resources; and (4) whether there are "ready alternatives" to the regulation. *Overton*, 539 U.S. at 132 (quoting *Turner*, 482 U.S. at 89–91). Critically, the inmate challenging the prison regulation bears the burden of disproving its validity. *Overton*, 539 U.S. at 132. Furthermore, when evaluating the constitutionality of a prison regulation, the court must give prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979).

After evaluating the four *Turner* factors at length, both the *Bratcher* and *Strebe* courts concluded that the mail policy passed constitutional muster.[9] The Fourth Circuit, addressing the appeal in *Strebe*, "conclude[d] that the district court correctly determined that all four *Turner* factors weigh in Defendants' favor" and that plaintiff "failed to meet his burden of proving the invalidity of the mail policy." *Strebe*, 783 F. App'x at 288 (affirming grant of summary judgment for defendants). Without restating that analysis here, the court agrees with and adopts the *Turner* analysis set forth by the *Bratcher* and *Strebe* courts. *See Shell v. Boyd*, No. 7:18CV00333, 2019 WL 4786052, at * 7 n.5 (W.D. Va. Sept. 30, 2019) (finding the rationale in *Bratcher* and *Strebe* "applicable and persuasive here" as to the same correspondence policy and rejecting a challenge to the policy as without merit). Thus, for the same reasons explained in those cases, the court concludes that Ofori's challenge to the policy does not state a First Amendment violation, and it must be dismissed.

---

[9] The *Bratcher* and *Strebe* courts were ruling on summary judgment motions, but the fact that the court here is ruling on a motion to dismiss does not alter the result. *Cf. Desper v. Clarke*, 1 F.4th 236, 245 (4th Cir. 2021) (affirming district court's grant of motion to dismiss as to claim challenging visitation regulation and explaining that the plaintiff bears the burden, under *Turner*, to allege in his complaint facts sufficient to show that the challenged policy was not reasonably related to a legitimate penological objective).

The court further agrees with the *Bratcher* court that the policy does not violate an inmate's Fourteenth Amendment rights. To find a due process violation, a court must determine first that a constitutionally protected liberty or property right exists and has been infringed by the policy. *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). As the *Bratcher* court explained, "'the decision to censor or withhold delivery of a particular letter' such that an inmate is unable to correspond with the sender of the letter 'must be accompanied by minimum procedural safeguards,'" *id.* at *15 (quoting *Montcalm Pub. Corp. v. Beck*, 80 F.3d 105, 108 (4th Cir. 1996)). But the policy here does not affect any liberty interest in corresponding with non-inmates—the substance of the correspondence was still given to Ofori, although it may be of a lesser visual quality. *See id.*

The policy does not infringe upon a property interest, either. As the *Bratcher* court explained, mail or photographs that an inmate is not permitted to possess are considered contraband and are thus subject to confiscation under VDOC regulations. As such, no property interest arises in incoming color photographs under the policy because an inmate may not possess them and the state does not create a property interest in that mail. *Id.* at *16–17. Because the mail policy does not infringe upon a liberty or property interest, Ofori's claim fails as a matter of law.

       c. *Handling of Undelivered Mail*

The last part of Ofori's claim—concerning the destruction of outgoing mail that is rejected, after an opportunity to resend it—also fails for several reasons. First of all, as Ofori recognizes, it was the postal service that rejected his mail in the instances he identified, not defendants. Moreover, his complaint about having to pay to make up insufficient postal fees is meritless. Inmates have no right to free mail. *See Hershberger v. Scaletta*, 33 F.3d 955, 957 (8th Cir. 1994) ("[I]ndigent inmates have no constitutional right to free postage for nonlegal mail.");

14

*White v. White*, 886 F.2d 721, 723 (4th Cir 1989) ("It is well-settled that 'prisoners do not have an unlimited right to free postage in connection with the right of access to the courts. Reasonable regulations are necessary to balance the rights of prisoners with budgetary considerations.")  Accordingly, , it is not unconstitutional for VDOC to require prisoners to pay the full postage when mailing items.  Put differently, the prison is under no obligation to pay additional postage to remail letters with insufficient postage or that an inmate has addressed improperly.

Furthermore, Ofori's own allegations show that he was given an opportunity to take corrective action (to provide additional postage or to provide an updated address) to ensure that his rejected mail could be resent.  That he was unable or unwilling to do so does not render the policy unconstitutional.  Further, to the extent his complaint is focused on the loss of his outgoing property, that claim fails for the same reasons the court discussed earlier, in addressing his allegations of mishandled mail.

For all of these reasons, the court concludes that Ofori's amended complaint, even with the allegations in his proposed second amended complaint, fails to state a First Amendment or Fourteenth Amendment violation as a result of the challenged mail policies.

### III.  CONCLUSION

Because Ofori's complaint fails to state a constitutional deprivation actionable under § 1983, even with his proposed additional allegations, his motion to amend will be denied as futile and defendants' motion to dismiss will be granted.

An appropriate order will be entered.

Entered: September 24, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge